## MAMIE CARR BOWDEN v. S. H. KRESS AND COMPANY.

### (Filed 2 April, 1930.)

1. **Negligence C e—Res ipsa loquitur does not apply to injury caused by falling on floor of store building.**

   The doctrine of *res ipsa loquitur* does not apply to an injury received by a customer or invitee in a store building caused by the customer's slipping and falling on the oiled floor of the store.

2. **Negligence A c—Evidence of negligence in failing to use due care to keep floors in reasonably safe condition held sufficient.**

   Evidence that a customer in a merchandising establishment received the injury in suit as a result of slipping and falling on the oiled floor of an aisle at a place where there was an unusual accumulation of oil, tending to show that the oil was improperly or negligently applied, and that such condition existed for more than a week is sufficient to take the case to the jury on the question of whether the condition had existed for such length of time as should have been discovered by the exercise of ordinary care.

CIVIL ACTION, before *Moore, Special Judge,* at August Term, 1929, of WAYNE.

The defendant is engaged in operating a mercantile business in the city of Goldsboro, North Carolina. The stock of merchandise carried by defendant was arranged on tables, counters and shelves for the purpose of effective display. There were several aisles in the store, and the defendant from time to time used a floor dressing or floor oil upon the aisles for the purpose of keeping down dust.

The plaintiff alleged that on the afternoon of 11 December, 1926, she visited the store of defendant for the purpose of making certain purchases of merchandise. After purchasing some needles and silk near the entrance, she inquired of a clerk where she could find some paint. She was directed to the rear of the store. She walked slowly down the aisle, examining merchandise displayed upon the tables and counters in order to ascertain if there was any other article which she

desired to purchase. While walking down one of the aisles she testified: "I seemed to have stepped on something very slick and my feet both went out from under me and I fell on my hip. I did not observe the condition of the floor where I fell nor did I later before I was moved from the store. The fall shocked me. . . . The slippery floor caused me to fall. I was conscious of the floor being slick because my feet slipped out from under me. There was absolutely nothing to make me slip but the slick floor."

Another witness for plaintiff testified that he was sent for by the plaintiff when she fell and immediately went to the store of defendant. He said: "When I went in Kress' store I observed the floor, and it was slippery from oil or some substance used on the floor. It was more noticeable at the point where she fell than at any other point."

Another witness went into the store before the plaintiff was removed, and in describing the place where plaintiff fell, said: "It was a soft, slippery place, and you could see in the oil where her foot slipped in it— the print of her shoe when it turned over. The oil on the floor would have been visible to any one who had inspected the floor. . . . There was lots more oil at this place than there was at any other places in the store. I didn't see anything at all only where the floor had been oiled."

Another witness said: "The floor at that point was slick with a kind of thick oil or something. . . . It seemed like it was pretty thick on the floor there." Another witness said: "The floor looked like it was slicker where she fell than it was at any other point in the store. It seemed like there was more oil there."

The evidence further showed that the defendant had purchased an approved floor oil or dressing which was in general use for the purpose of oiling floors, and that the floors were always oiled on Saturday night after the store was closed. The injury to plaintiff occurred on Saturday afternoon and the floor had been oiled the preceding Saturday night, so that the oil had been on the floor about a week.

There was further evidence to the effect that the floor had been properly inspected and properly oiled, and that there was no more oil at the point where plaintiff fell than at other places in the aisles. Plaintiff sustained serious and permanent injury.

Issues of negligence, contributory negligence and damages were submitted to the jury and answered in favor of plaintiff. The damage assessed by the jury was $5,000.

From judgment upon the verdict the defendant appealed.

*Ruark & Ruark for plaintiff.*
*Dickinson & Freeman for defendant.*

BROGDEN, J. What duty does the owner of a store owe to a customer with respect to the condition of the floors of such store?

The general rule deduced from the authorities is that an owner or occupant of buildings who directly or by implication invites or induces others to enter therein, owes a duty to such persons to exercise ordinary care to keep such premises in a reasonably safe condition and to give warning of hidden peril. The owner is not an insurer of the safety of the invitee while on the premises. *Leavister v. Piano Co.,* 185 N. C., 152, 116 S. E., 405; *Bohannon v. Stores Co.,* 197 N. C., 755.

Moreover, the judicial utterances upon the subject concur in the view that the doctrine of *res ipsa loquitur* does not apply to injury resulting from slipping or falling occasioned by the presence of grease or oil upon the floors of a store.

The courts discussing the liability of a store-owner for injury received by customers and other invitees as the result of the accumulation of water, oil or grease upon the floors, have adopted widely divergent views. The leading cases denying liability are *Spickernagle v. Woolworth,* 84 Atlantic, 909; *Kresge v. Fader,* 158 N. E., 174; *Dimarco v. Cupp Grocery Co.,* 88 Pa. Superior Court, 450; *Lavine v. United Paper Board Co.,* 154 N. E., 635. Cases permitting recovery for such injuries are as follows: *Harverty Furniture Co. v. Jewell,* 144 S. E., 46; *Robinson v. Woolworth Co.,* 261 Pac., 253; *Benesch & Sons v. Kerkler,* 139 Atlantic, 557; *McNeill v. Brown & Co.,* 22 Fed. (2d), 675; *Markham v. Bell Stores Co.,* 132 Atlantic, 178; *Bradworth v. Woolworth Co.,* 140 S. E., 105.

The leading authorities upon the subject are assembled in 35 A. L. R., 181; 58 A. L. R., 136. The South Carolina Court in the *Bradford case, supra,* declared that the analogy of master and servant was applicable to injuries sustained by a customer as a result of a fall upon an oiled floor. This theory was attacked in two dissenting opinions and particularly in the dissenting opinion of *Cothran, J.,* in which the authorities upon the entire subject are discussed.

Perhaps the case most similar to the case at bar is that of *Benesch & Sons v. Kerkler, supra.* In that case plaintiff testified that "as she was returning from a cross aisle into the right aisle leading to the exit she slipped and fell." The floor was "dark and mucky and smeary like an oiled floor would be when the oil was not dried," and that the "oily condition of the floor" caused her to fall. The case was submitted to the jury upon the theory that the oil had not dried, and that upon such facts the jury was warranted in finding that the owner was negligent. The Court said: "It was not the mere fact that the floor was oiled and that the appellee fell that entitled her to recover; it was the condition in

which the floor was left as the result of oiling that was submitted to the jury, and took it out of the rule laid down in the case of *Spickernagle v. Woolworth,"* etc.

It will serve no useful or beneficial purpose to attempt to analyze the various decisions or to elaborate the theories upon which particular decisions are based. This is done in the cases and annotations already referred to. The only practical question is to determine which line the case at bar belongs to, under the law as held and interpreted by the courts.

We are of the opinion and so hold that there was sufficient evidence of negligence to be submitted to the jury. Viewing the evidence of plaintiff with that liberality which the law demands in cases of nonsuit, it is apparent that there was an accumulation of oil upon the floor where the plaintiff sustained her injury. This accumulation was unusual for the reason that the testimony tended to show that there was much more oil at this point than at any other point in the store. The print of plaintiff's shoe was observed in this patch of oil. These pertinent facts point unerringly to the conclusion that the oil was not properly applied or that it was applied in a negligent and unusual manner and had been in such condition for more than a week. Hence the trial judge properly submitted to the jury the question as to whether the condition had existed for such length of time as to have been discovered by the exercise of ordinary care.

The defendant relies upon *Bohannon v. Stores Co., supra,* but the principle announced in that case has no application. The plaintiff was an employee of the store and was familiar with the metal strips across the front of the steps. There was no evidence of any defect in the metal strips or in the steps. Furthermore, all the steps were exactly alike and in plain view. Hence there was nothing unusual or hidden.

No error.